UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
Manalapan Surgery Center, P.A., New Horizon
Surgical Center, LLC, Surgicore of Jersey City,
LLC, and Surgicore Surgical Center, LLC,

                            Plaintiffs,

            -against-

1199 SEIU National Benefit Fund,

                        Defendant.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**
23-CV-03525 (DG) (JAM)

DIANE GUJARATI, United States District Judge:

On May 10, 2023, Plaintiffs Manalapan Surgery Center, P.A.; New Horizon Surgical

Center, LLC; Surgicore of Jersey City, LLC; and Surgicore Surgical Center, LLC (collectively,

"Plaintiffs" or "Centers") commenced this action against Defendant 1199 SEIU National Benefit

Fund ("Defendant" or "Fund").  *See generally* Complaint ("Compl."), ECF No. 1.[1]  Plaintiffs'

Complaint asserts four Causes of Action: (1) Breach of Contract, (2) Unjust Enrichment, (3)

Promissory Estoppel, and (4) Fraudulent Inducement.[2]  In substance, this action concerns

amounts allegedly owed by Defendant to Plaintiffs for medical services rendered to patients.

Pending before the Court is Defendant's Motion to Dismiss brought pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure.  *See* ECF No. 25.

For the reasons set forth below, Defendant's Motion to Dismiss, ECF No. 25, is granted

and the Complaint, ECF No. 1, is dismissed for failure to state a claim upon which relief can be

---

[1]  Familiarity with the procedural history and background of this action is assumed herein.

[2]  The Court has diversity jurisdiction over this action.  *See* 28 U.S.C. § 1332; Compl ¶ 10.

As the parties appear to agree, Plaintiffs' claims are brought under New York law.

granted.

## BACKGROUND

### I.    Factual Background[3]

#### A.    The Parties

Plaintiffs allege that they are health care facilities that provide outpatient surgery and preventive care services, usually at cheaper costs than a hospital.  *See* Compl. ¶ 14.  More specifically, Plaintiffs allege that they are ambulatory surgical centers.  *See* Compl. ¶ 1.

Plaintiffs allege that Defendant is an insurance company.  *See* Compl. ¶ 11.

#### B.    The "Ad-Hoc Agreement," Provision of Services, and Payment

Plaintiffs allege that they are non-participating providers, colloquially known as out-of-network providers.  *See* Compl. ¶ 2.  Plaintiffs also allege that non-participating providers have no formal agreement with Defendant to render medical treatment to consumers of Defendant's insurance products for a set price.  *See* Compl. ¶ 3.  Plaintiffs allege that in all instances, Defendant determines the amounts it pays to medical providers, like the Centers.  *See* Compl. ¶ 17.  More specifically, Plaintiffs allege that in all instances, both Defendant and the relevant patients share the costs of paying the relevant Center and that in all instances, Defendant determines the total amount that cost sharing requirements will be based on because there are no contracts between non-participating providers and insurers on which to base the patient's cost sharing.  *See* Compl. ¶¶ 18-19.  Plaintiffs allege that, accordingly, Defendant always determines the amounts that it will pay to medical providers regardless of the terms of the patient's medical plan.  *See* Compl. ¶ 20.  Plaintiffs allege that they never agreed to be bound by the terms and

---

[3]    The facts set forth in this section are taken from the Complaint and accepted as true for purposes of the instant Motion.

conditions of any relevant patient's health insurance plan. *See* Compl. ¶ 21.[4]

Plaintiffs allege that they entered into an "ad-hoc agreement" with Defendant. *See* Compl. ¶ 4. Plaintiffs allege that Defendant made a unilateral offer to pay for covered services rendered to its insured, which offer Plaintiffs accepted by providing surgical services to numerous patients entitled to health insurance benefits through Defendant. *See* Compl. ¶ 5; *see also* Compl. ¶ 33 (alleging that on each of the dates of service, the relevant Center accepted Defendant's offer by rendering surgical services to the relevant patient).[5]

Plaintiffs allege that for each of the dates of service identified in Exhibit 1 to the Complaint, the relevant Center submitted its billing to Defendant within 120 days of the service being rendered; that the relevant Center's billing indicated the services it rendered using industry standard billing codes ("CPT codes"); and that the relevant Center substantiated the use of those CPT codes by including the relevant medical documentation with its billing. *See* Compl. ¶¶ 34, 36. Plaintiffs also allege that it is industry standard practice for Defendant to rely upon the billing codes submitted by a medical provider to determine the amount Defendant would pay. *See* Compl. ¶ 37. Plaintiffs allege that the "total value" of the services rendered to the patients was $1,431,409.66 and that after Defendant adjudicated the claims, Defendant determined that Plaintiffs had a right to payment and Defendant issued payment of $60,633.14. *See* Compl. ¶¶ 6-8.

Plaintiffs allege "[u]pon information and belief" that "prior to any surgical services being

---

[4]  Plaintiffs do not allege that their patients assigned any rights and/or benefits to Plaintiffs. *See generally* Compl.

[5]  Plaintiffs attach to the Complaint as Exhibit 1 a spreadsheet including the relevant Plaintiff's name, the relevant patient's initials, the date of the surgery, the total charges for that patient, and the amount previously paid, if any. *See* Compl. ¶ 18; Compl. Ex. 1, ECF No. 1-3.

performed, the non-party physician performing the surgical service contacted, and informed that a surgical procedure was necessary for the relevant [p]atient." *See* Compl. ¶ 27. Plaintiffs allege that surgical procedures were therefore scheduled at the relevant Centers for each of the relevant patients. *See* Compl. ¶ 28. Plaintiffs further allege that Defendant "knew or should have known that the proposed surgical service must have been performed in a hospital or ambulatory surgical center." *See* Compl. ¶ 29. Plaintiffs allege that upon learning that surgical services were scheduled at the relevant Center for the relevant patient, an employee of the relevant Center contacted Defendant and spoke to a customer service representative of Defendant and confirmed that Defendant would indeed share the costs of the surgery to be performed on the relevant patient and that the service the relevant Center was going to render was eligible for reimbursement. *See* Compl. ¶ 30.

Plaintiffs allege that by confirming that the scheduled surgical procedure was authorized and covered, Defendant agreed that all component services, *e.g.*, anesthesia and use of a facility to perform the surgery, were authorized and covered. *See* Compl. ¶ 31. Plaintiffs further allege that Defendant "had engaged in a course of conduct with the Centers for at least thirty-six months prior to the filing of th[e] Complaint, during which time, an employee of the relevant Center would verify that the surgical service scheduled with [an employee of Defendant], that [Defendant] would contribute to the costs associated with the surgery, and thereafter [Defendant] would issue payment to the relevant Center upon receipt of the relevant Center's billing." *See* Compl. ¶ 32.

Plaintiffs allege that in the healthcare industry, "usual, customary, and reasonable ("UCR") is the charge for a service in a geographic area based on what providers in the area usually charge for the same or similar medical services" and that "[t]he 80th percentile of UCR is

4

a percentile threshold recognized in the health insurance industry as a reasonable value for a medical service." *See* Compl. ¶ 22.

Plaintiffs allege that for each date of service identified in Exhibit 1 to the Complaint, the relevant Center billed Defendant the amount indicated in Exhibit 1, its customary price for the services rendered, which is equal to or less than the UCR cost recognized in the healthcare industry. *See* Compl. ¶ 35; *see also* Compl. Ex. 1. Plaintiffs further allege that Defendant: (1) "accepted the performance by each of the Centers," (2) "adjudicated each claim and determined the Centers had a right to payment," and (3) "did not claim a term from the relevant patient's plan mandated the Centers were not entitled to payment of the usual and customary prevailing rates for those services." *See* Compl. ¶¶ 38-40.

Plaintiffs allege that "[b]ut for [Defendant's] agreement to contribute to the costs for the surgery rendered to the relevant patient the Centers would not have otherwise provided their services to the relevant [p]atient." *See* Compl. ¶ 59. Plaintiffs also allege that "[r]elying on [Defendant's] offer of payment, the Centers forbore from collecting payment in-full from the relevant [p]atient prior to providing its services." *See* Compl. ¶ 60.

Plaintiffs allege "[u]pon information and belief" that Defendant has paid for all component services for the surgical procedure rendered to each patient for each of the dates of service identified in Exhibit 1 to the Complaint and that, nevertheless, Defendant intentionally issued a payment to each Center that was late and unreasonable according to industry standards. *See* Compl. ¶¶ 41-42.

Plaintiffs seek, *inter alia*, $381,670.61, prejudgment interest, and treble damages. *See* Compl. at 11.

## II.    Procedural Background

On May 10, 2023, Plaintiffs filed the Complaint in this action.  *See* ECF No. 1.  On June 21, 2023, Defendant filed a motion for a pre-motion conference in anticipation of filing a motion to dismiss.  *See* ECF No. 8.  On June 29, 2023, Plaintiffs filed a letter in response to Defendant's motion for a pre-motion conference.  *See* ECF No. 10.  On July 7, 2023, Plaintiffs filed a letter stating, *inter alia*, that Plaintiffs had "no intention of filing an amended complaint."  *See* ECF No. 11.  On July 18, 2023, the Court held a pre-motion conference.  *See* ECF No. 12.  On March 8, 2024, Defendant filed the Motion to Dismiss.  *See* ECF No. 25; *see also* Defendant's Memorandum of Law in Support of Motion to Dismiss ("Def.'s Br."), ECF No. 27; Defendant's Reply Memorandum of Law ("Reply"), ECF No. 30; ECF No. 26.  Plaintiffs oppose the Motion. *See* Memorandum of Law in Opposition to Motion to Dismiss ("Pls.' Br."), ECF No. 29; *see also* ECF No. 28.[6]

In support of the Motion to Dismiss, Defendant argues that the Complaint should be dismissed because Plaintiffs' claims are expressly preempted by the Employee Retirement Income Security Act of 1974 ("ERISA") and that, in any event, the Complaint fails to plausibly state a claim for breach of contract, unjust enrichment, promissory estoppel, or fraudulent inducement.  *See generally* Def.'s Br.; Reply.

Plaintiffs argue in opposition that their claims are not expressly preempted by ERISA and that the Complaint contains allegations sufficient to state claims for breach of contract, unjust enrichment, promissory estoppel, and fraudulent inducement.  *See generally* Pls.' Br.

---

[6]    In Defendant's Reply Memorandum of Law, Defendant requests that the Court deem Plaintiff's Memorandum of Law "non-compliant and refuse to consider any arguments beyond page 25."  *See* Reply at 3 n.3.  The Court denies the request but cautions Plaintiffs' counsel against filing briefs that fail to comply with the undersigned's Individual Practice Rules without first seeking and obtaining leave of Court.

## STANDARD OF REVIEW

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must "accept all 'well-pleaded factual allegations' in the complaint as true" and "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Lynch v. City of N.Y.*, 952 F.3d 67, 74-75 (2d Cir. 2020) (first quoting *Iqbal*, 556 U.S. at 679; then quoting *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009)). However, "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do," and dismissal is proper where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 555, 558. A court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *See Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quotation omitted); *see also Iqbal*, 556 U.S. at 678 (noting that a court is "not bound to accept as true a legal conclusion couched as a factual allegation" (quoting *Twombly*, 550 U.S. at 555)); *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (noting that "factual allegations must be sufficient to support necessary legal conclusions"). "In considering a motion to dismiss for failure to state a claim, '[a] district court is normally required to look only to the allegations on the face of the complaint,'" though "[it] may consider documents that 'are attached to the complaint,' 'incorporated in it by reference,' 'integral' to the complaint, or the

proper subject of judicial notice." *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

## DISCUSSION

For the reasons set forth below, Defendant's Motion to Dismiss is granted and the Complaint is dismissed.

## I.    ERISA Preemption

For the reasons set forth below, the Court concludes that Plaintiffs' claims are not preempted by ERISA.

### A.    Applicable Law

"Congress enacted ERISA to protect the interests of participants in employee benefit plans and their beneficiaries by setting out substantive regulatory requirements for employee benefit plans and to provide for appropriate remedies, sanctions, and ready access to the Federal courts." *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (alterations accepted) (quotations omitted). "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Id.* "To this end, ERISA includes expansive pre-emption provisions, which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Id.* (quotation and citation omitted).

"ERISA provides for two types of preemption: complete preemption . . . and express preemption." *Trundle & Co. Pension Plan v. Emanuel*, No. 18-CV-07290, 2019 WL 4735380, at *3 (S.D.N.Y. Sept. 27, 2019). "Express preemption is one of the three familiar forms of ordinary defensive preemption." *Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 238 (2d Cir. 2014) (quotation omitted). "It occurs when 'Congress . . . withdraw[s] specified powers from the States by enacting a statute containing an express preemption provision.'" *Id.* (quoting *Arizona*

*v. United States*, 567 U.S. 387, 399 (2012)).[7]

> 29 U.S.C. § 1144(a) – ERISA's express preemption clause – provides:
>
> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

*See* 29 U.S.C. § 1144(a); *see also Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 86 (2020); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44-45 (1987).[8]  29 U.S.C. § 1144(b)(2) sets forth certain exceptions to express preemption, which are not relevant here.  *See* 29 U.S.C. § 1144(b)(2); *see also Pilot Life Ins. Co.*, 481 U.S. at 44-47 (discussing exceptions).

The Supreme Court has summarized ERISA's express preemption provision and its exceptions as follows: "If a state law relates to employee benefit plans, it is pre-empted.  The saving clause excepts from the pre-emption clause laws that regulate insurance.  The deemer clause makes clear that a state law that purports to regulate insurance cannot deem an employee benefit plan to be an insurance company."  *See Pilot Life Ins. Co.*, 481 U.S. at 45 (alterations accepted) (quotations and citations omitted); *see also Jay Kripalani M.D., P.C. v. Indep. Blue Cross*, No. 23-CV-04225, 2024 WL 4350492, at *4 (E.D.N.Y. Sept. 30, 2024).

---

[7]  "In contrast, under the 'so-called complete preemption doctrine,' which is distinct from the three forms of defensive preemption, 'a plaintiff's state cause of action [may be recast] as a federal claim for relief, making [its] removal [by the defendant] proper on the basis of federal question jurisdiction.'"  *Wurtz*, 761 F.3d at 238 (quoting *Vaden v. Discover Bank*, 556 U.S. 49, 61 (2009)).  At issue in the instant diversity action – as the parties appear to agree – is whether ERISA's express preemption clause preempts Plaintiffs' claims.  *See, e.g.*, *Jay Kripalani M.D., P.C. v. Indep. Blue Cross*, No. 23-CV-04225, 2024 WL 4350492, at *4 (E.D.N.Y. Sept. 30, 2024).

[8]  29 U.S.C. § 1144(c)(1) provides: "The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State.  A law of the United States applicable only to the District of Columbia shall be treated as a State law rather than a law of the United States."

"ERISA preemption is not limited to state laws that specifically affect employee benefit plans; it extends to state common-law contract and tort actions that relate to benefits as well." *Chau v. Hartford Life Ins. Co.*, 167 F. Supp. 3d 564, 571 (S.D.N.Y. 2016); *see also Pilot Life Ins. Co.*, 481 U.S. at 47 (referencing the "expansive sweep of the pre-emption clause"). However, "the term 'relate to' cannot be taken to extend to the furthest stretch of its indeterminacy, or else for all practical purposes pre-emption would never run its course." *Egelhoff v. Egelhoff*, 532 U.S. 141, 146 (2001) (quotations omitted); *see also Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319 (2016) (stating that "the need for workable standards has led the Court to reject uncritical literalism in applying the [pre-emption] clause" (quotation omitted)); *Stevenson v. Bank of N.Y. Co.*, 609 F.3d 56, 59 (2d Cir. 2010) (noting that "[t]he 'relate to' language . . . is so expansive as a textual matter as to afford no meaningful limitation on the scope of ERISA preemption" and, "[t]herefore, [the court] look[s] to the structure and objectives of the statute as a means of determining the scope of preemption").

"[A] state law relates to an ERISA plan if it has a connection with or reference to such a plan." *Egelhoff*, 532 U.S. at 147 (quotation omitted); *see also Rutledge*, 592 U.S. at 86. The Supreme Court described two categories of state laws that ERISA pre-empts as follows:

> First, ERISA pre-empts a state law if it has a reference to ERISA plans. To be more precise, where a State's law acts immediately and exclusively upon ERISA plans or where the existence of ERISA plans is essential to the law's operation, that reference will result in pre-emption. [Se]cond, [E]RISA pre-empts a state law that has an impermissible connection with ERISA plans, meaning a state law that governs a central matter of plan administration or interferes with nationally uniform plan administration. A state law also might have an impermissible connection with ERISA plans if acute, albeit indirect, economic effects of the state law force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers. When considered together, these formulations ensure that ERISA's express pre-emption clause receives the broad scope Congress intended while avoiding the clause's susceptibility to limitless application.

*See Gobeille*, 577 U.S. at 319-20 (alterations accepted) (quotations and citations omitted).

The United States Court of Appeals for the Second Circuit has held that "the analysis of ERISA preemption must start with the presumption that Congress does not intend to supplant state law" and the Second Circuit has "noted a reluctance to find ERISA preemption where state laws do not affect the relationships among the core ERISA entities: beneficiaries, participants, administrators, employers, trustees and other fiduciaries." *See Stevenson*, 609 F.3d at 59 (quotations omitted). The Second Circuit has also noted, however, that "state laws that would tend to control or supersede central ERISA functions – such as state laws affecting the determination of eligibility for benefits, amounts of benefits, or means of securing unpaid benefits – have typically been found to be preempted." *See id.* (quotation omitted); *see also N. Jersey Plastic Surgery Ctr., LLC v. 1199SEUI Nat'l Benefit Fund*, No. 22-CV-06087, 2023 WL 5956142, at *16 (S.D.N.Y. Sept. 13, 2023).

## B.    Plaintiffs' Claims Are Not Preempted by ERISA

In arguing that the four Causes of Action in the Complaint are not preempted by ERISA, Plaintiffs argue that they "seek to remedy state common law obligations, not obligations arising under ERISA." *See* Pls.' Br. at 12. Plaintiffs assert, *inter alia*, that they "make[] no allegation any benefit was denied," *see* Pls.' Br. at 12; that their "claims, as pleaded, do not seek to rectify a denial of benefits," *see* Pls.' Br. at 12; that "[t]here is no proof [Defendant's] refusal to make proper payment was the result of a denial of benefits, or a reduction of benefits or some other coverage decision," *see* Pls.' Br. at 12-13; that "[t]here is no evidence before the Court that [Defendant's] payment amount is the result of a reference to or a calculation pursuant to the terms and conditions of the Plan," *see* Pls.' Br. at 14; that "the moment [Defendant] determined it was covering [Plaintiffs'] services, [Defendant's] obligation under[] health plan ended and

their obligation under New York Common Law was triggered," *see* Pls.' Br. at 17; and that Plaintiffs' "claims are based on [Defendant's] actions and words and not[] Plan Terms," *see* Pls.' Br. at 18.

In arguing that the claims in the Complaint are preempted by ERISA, Defendant argues, *inter alia*, that Plaintiffs' state law claims "relate to" an ERISA plan "because each claim impermissibly seeks to use an alternative enforcement mechanism to obtain benefits owed under ERISA;" that "Plaintiffs' request for reimbursement would not have arisen without Plaintiffs' patients participating in the Fund;" and that "[e]ach of [Plaintiffs'] common law causes of action seeks reimbursement of billed medical charges that were paid at a rate according to the Fund's governing plan document." *See* Def.'s Br. at 8-9.

Although lacking in detail, the allegations in the Complaint, accepted as true for purposes of the instant Motion, take Plaintiffs' claims outside the scope of ERISA's express preemption provision.

As alleged in the Complaint, Plaintiffs' claims appear to arise from a communication with a customer service representative of Defendant during which Defendant is alleged to have entered into an agreement, made a promise, and/or made a material misrepresentation or omission with respect to payment for services. *See* Compl. ¶ 30.[9]  The Complaint does not

---

[9]  It is not entirely clear from the Complaint whether Plaintiffs intended to allege that there was one agreement, based on one conversation with a customer service representative of Defendant, or multiple agreements – *i.e.*, agreements entered into with respect to each procedure and/or an agreement entered into with respect to each Plaintiff.  The Court's preemption analysis and conclusion are the same regardless of Plaintiffs' intent in this regard. For ease of readability, the Court refers to an "agreement" and/or "communication" in the singular.

Although the parties dispute whether the Court may consider the plan document submitted by Defendant, ECF No. 26-1 ("Summary Plan Description"), the Court need not – and does not – consider the document in light of the Court's analysis and conclusions herein.

allege that the communication with Defendant's customer service representative related to an ERISA plan and the Complaint does not otherwise rely on allegations about – or seek relief that would affect – the terms of an ERISA plan, the administration of an ERISA plan, or relationships among core ERISA entities.  The Complaint does not, for example, allege that Plaintiffs' claims are premised on the assignment and/or denial of benefits pursuant to an ERISA plan.  And the relief sought would not, for example, force an ERISA plan to adopt a specific coverage scheme. Here, Plaintiffs' claims do not "relate to" an ERISA plan.  *See* 29 U.S.C. § 1144(a).  Plaintiffs' claims neither have a "reference to ERISA plans" nor have "an impermissible connection with ERISA plans."  *See Gobielle*, 577 U.S. at 319-20; *see also Jay Kripalani M.D., P.C.*, 2024 WL 4350492, at *5-7.

The allegations in the Complaint, accepted as true for purposes of the instant Motion, do not trigger ERISA preemption.  *See Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008) (recognizing that ERISA preempts state common law claims that seek "to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA" (quotation omitted)); *N. Jersey Plastic Surgery Ctr., LLC*, 2023 WL 5956142, at *16-18 (distinguishing between claims that are preempted and those that are not and citing, *inter alia*, *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141 (2d Cir. 2017)).[10]  The Court therefore proceeds to consider whether Plaintiffs have stated any claim upon which relief can be granted.

## II.    Plaintiffs' Breach of Contract Claim

For the reasons set forth below, Plaintiffs' First Cause of Action – for breach of contract

---

[10]  In arguing that preemption applies here, Defendant cites to inapposite cases.  *See, e.g.*, Def.'s Br. at 9-10 (citing *Neuorological Surgery, P.C. v. Aetna Health, Inc.*, 511 F. Supp. 3d 267 (E.D.N.Y. 2021)).

– must be dismissed for failure to state a claim.

### A.    Applicable Law

Under New York law, "a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Queens Ballpark Co., LLC v. Vysk Commc'ns*, 226 F. Supp. 3d 254, 258 (S.D.N.Y. 2016) (quoting *Fischer & Mandell, LLP v. Citibank N.A.*, 632 F.3d 793, 799 (2d Cir. 2011)).

 "[A] complaint must allege the essential terms of the parties' purported contract in nonconclusory language, including the specific provisions of the contract upon which liability is predicated." *Emergency Physician Servs. of N.Y. v. UnitedHealth Grp., Inc.*, No. 20-CV-09183, 2021 WL 4437166, at *11 (S.D.N.Y. Sept. 28, 2021) (quotation omitted).  "A complaint fails to sufficiently plead the existence of a contract if it does not provide factual allegations regarding, inter alia, the formation of the contract, the date it took place, and the contract's major terms." *Id.* (quotations omitted); *see also Lim v. Radish Media Inc.*, No. 22-1610, 2023 WL 2440160, at *2 (2d Cir. Mar. 10, 2023); *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x 102, 104 (2d Cir. 2012).

"[C]ourts have repeatedly held that they may recognize the existence of binding obligations created by purely oral contracts when ruling on Rule 12(b)(6) . . . motions." *Menlo v. Friends of Tzeirei Chabad in Israel, Inc.*, No. 11-CV-01978, 2013 WL 1387057, at *2 (S.D.N.Y. Apr. 5, 2013) (collecting cases).

### B.    Plaintiffs' Breach of Contract Claim is Dismissed

The Complaint fails to plausibly allege the existence of an agreement between Plaintiffs and Defendant, which is fatal to the breach of contract claim.  Although the Complaint alleges that Plaintiffs and Defendant entered into an "ad-hoc agreement," *see* Compl. ¶ 4, the Complaint

does not allege specific provisions of, or any details about, the purported agreement. The Complaint does not, for example, contain allegations as to the alleged agreement's essential terms or as to the formation of the agreement, including as to when the agreement was formed. *See generally* Compl. Indeed, it is not even clear from the Complaint whether Plaintiffs intended to allege one ad-hoc agreement or multiple agreements.[11]

Alleging in general, conclusory terms that "[Defendant] contracted with the relevant Centers to render medical services to the relevant [p]atient and to provide related, necessary medical services" and that the Centers "provided all the medical services contracted for but [Defendant] has failed and refused to pay the Centers for those services as agreed between the parties," *see* Compl. ¶¶ 44-45, without more, does not plausibly allege the existence of a contract. And Plaintiffs' allegations regarding an unidentified "employee of the relevant Center" and unidentified "customer service representative" of Defendant, *see, e.g.*, Compl. ¶ 30, are insufficient to support the conclusion that a contract existed. The allegation that an unidentified employee had a communication with an unidentified customer service representative and "confirmed that [Defendant] would indeed share the costs of the surgery to be performed on the relevant patient and that the service the relevant Center was going to render was eligible for reimbursement," *see* Compl. ¶ 30, does not plausibly allege the essential terms of any purported agreement. Such allegation does not, for example, plausibly allege that Defendant agreed that it would be responsible for all (or any particular amount) of the costs – or even that Defendant

---

[11] Plaintiffs state in their briefing that they "allege they had entered into a series of discrete ad-hoc agreements for the provision of medical services rendered to Plan beneficiaries." *See* Pls.' Br. at 1. It is not clear, however, whether Plaintiffs allege that they entered into one – or multiple – agreements *as to the rate and/or amount of payment. See generally* Compl.; Pls.' Br. This lack of clarity does not affect the Court's analysis herein.

intended to be bound by a contract with Plaintiffs.[12]

Plaintiffs fail to state a claim for breach of contract and that claim therefore is dismissed.

## III.    Plaintiffs' Unjust Enrichment Claim

For the reasons set forth below, Plaintiffs' Second Cause of Action – for unjust enrichment – must be dismissed for failure to state a claim.

### A.    Applicable Law

"Under New York law, an unjust enrichment claim requires a plaintiff to prove that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Ashland Inc. v. Morgan Stanley & Co.*, 652 F.3d 333, 339 (2d Cir. 2011) (quotation omitted). An unjust enrichment claim is "available only in unusual situations." *See Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377, 404 (E.D.N.Y. 2018) (quotation omitted). "[U]njust enrichment is not a catchall cause of action to be used when others fail." *See Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012).

An unjust enrichment claim is not available where it "simply duplicates, or replaces, a conventional contract or tort claim." *See id.* at 790-91 (collecting cases). However, "if the subject-matter of an unjust enrichment claim is not covered by a valid, enforceable contractual obligation, that claim is not duplicative and need not be dismissed based solely on the existence of a breach of contract claim." *See Shak v. Adelphi Univ.*, 549 F. Supp. 3d 267, 274 (E.D.N.Y.

---

[12] Although Plaintiffs assert in their briefing that the "agreed fee schedule" was "80 percent of the customary fee," *see* Pls.' Br. at 17, the Complaint does not plausibly allege such purported agreed fee schedule. *See generally* Compl. Plaintiffs' various general allegations about industry norms, practices, and customs and the parties' course of conduct over time, *see* Compl. ¶¶ 22-25, 32, do not save Plaintiffs' claims. Nor does Exhibit 1 to the Complaint save Plaintiffs' claim, as Plaintiffs' spreadsheet fails to set forth the essential terms of any purported agreement(s). *See generally* Compl. Ex. 1.

2021) (quotation omitted).

"Typically, in a claim for unjust enrichment, 'if the services were performed at the behest of someone other than the defendant, the plaintiff must look to that party for recovery.'" *Emergency Physician Servs. of N.Y. v. UnitedHealth Grp., Inc.*, No. 20-CV-09183, 2024 WL 4229902, at *10 (S.D.N.Y. Sept. 17, 2024) (quoting *JLJ Recycling Contractors Corp. v. Town of Babylon*, 754 N.Y.S.2d 897, 897 (2003)). In the medical services context, "New York courts have drawn a clear distinction between unjust enrichment cases involving emergency medical services, and those involving elective medical services." *See id.* (quotation omitted). As relevant here, in the latter category of cases, "where an individual patient seeks medical care and the care provider is afforded an opportunity to provide or decline care, the benefit runs entirely to the patient and not an insurer." *See id.* (alteration accepted) (quotation omitted); *see also Jay Kripalani M.D., P.C.*, 2024 WL 4350492, at *8. In such cases, courts have dismissed claims for unjust enrichment. *See Jay Kripalani M.D., P.C.*, 2024 WL 4350492, at *8 (stating that "when a provider brings an unjust enrichment claim against an insurer after it provides *voluntary or elective* medical services to the insured, it must demonstrate that services were performed for the defendant resulting in its unjust enrichment" and that "[i]t is not enough that the defendant received a benefit from the activities of the plaintiff" and noting that, in contrast, "when a provider brings an unjust enrichment claim against an insurer after it provides *emergency* medical services to the insured, it need not make the same showing" (quotation omitted)); *see also Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.*, No. 23-8083, 2024 WL 4315128, at *3-4 (2d Cir. Sept. 27, 2024).

### B. Plaintiffs' Unjust Enrichment Claim is Dismissed

Although Plaintiffs' unjust enrichment claim appears to be duplicative of Plaintiffs'

17

breach of contract claim, in light of the Court's conclusion that Plaintiffs have failed to plausibly allege the existence of a contract, the Court considers whether Plaintiffs have plausibly stated a claim for unjust enrichment.  The Court concludes that Plaintiffs have not done so.

Here, Plaintiffs provided surgical services to patients, who are not parties to this action. Plaintiffs do not allege that any of the surgical services were emergency services.  Indeed, Plaintiffs allege that the relevant services were scheduled services.  Because the services are properly characterized as elective medical services, not emergency medical services, the benefit runs to the patient and not the insurer.  *See Emergency Physician Servs. of N.Y.*, 2024 WL 4229902, at *10; *see also Rowe Plastic Surgery of N.J., L.L.C.*, 2024 WL 4315128, at *3-4.

Although the Complaint alleges that Defendant "knew or should have known that the Centers expected to be compensated for the benefit according to usual and customary prevailing rates," *see* Compl. ¶ 47, the Complaint does not plausibly allege that Defendant was enriched at Plaintiffs' expense – particularly in light of the fact, discussed above, that Plaintiffs fail to allege the details of any communication with Defendant regarding cost sharing.  Further, Plaintiffs' allegations do not plausibly demonstrate that equity and good conscience militate against permitting Defendant to retain what Plaintiffs are seeking to recover.

Plaintiffs fail to state a claim for unjust enrichment and that claim therefore is dismissed.

## IV.    Plaintiffs' Promissory Estoppel Claim

For the reasons set forth below, Plaintiffs' Third Cause of Action – for promissory estoppel – must be dismissed for failure to state a claim.

### A.    Applicable Law

"To state a claim for promissory estoppel, plaintiff must establish '(1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance on that promise; and (3) injury to

the relying party as a result of the reliance.'" *Gallagher v. New York City Health & Hosps. Corp.*, No. 16-CV-04389, 2017 WL 4326042, at *7 (S.D.N.Y. Sept. 20, 2017) (quoting *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000)), *aff'd*, 733 F. App'x 3 (2d Cir. 2018); *see also Rowe Plastic Surgery of N.J., L.L.C.*, 2024 WL 4315128, at *4.

### B.    Plaintiffs' Promissory Estoppel Claim is Dismissed

Plaintiffs fail to support their claim for promissory estoppel with allegations establishing "a clear and unambiguous promise" and establishing injury to Plaintiffs as a result of reliance on such promise.  The allegation that an unidentified employee communicated with an unidentified customer service representative of Defendant and "confirmed that [Defendant] would indeed share the costs of the surgery to be performed on the relevant patient and that the service the relevant Center was going to render was eligible for reimbursement," *see* Compl. ¶ 30, does not plausibly allege "a clear and unambiguous" promise.  Nor does the allegation that "[b]ut for [Defendant's] agreement to contribute to the costs for the surgery rendered to the relevant patient the Centers would not have otherwise provided their services to the relevant [p]atient," *see* Compl. ¶ 59, plausibly allege "a clear and unambiguous" promise.  As alleged, the purported promise was, at most, a promise that Defendant would make *some* payment related to the costs of the surgical procedure to be performed.  Moreover, as alleged, Defendant did remit some payment.  *See* Compl. ¶ 8.

Plaintiffs fail to state a claim for promissory estoppel and that claim therefore is dismissed.

### V.    Plaintiffs' Fraudulent Inducement Claim

For the reasons set forth below, Plaintiffs' Fourth Cause of Action – for fraudulent

inducement – must be dismissed for failure to state a claim.[13]

### A.      Applicable Law

"Under New York law, 'to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff.'" *President Container Grp. II, LLC v. Systec Corp.*, 467 F. Supp. 3d 158, 165 (S.D.N.Y. 2020) (quoting *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001)).  "Fraudulent inducement to enter into a contract, where 'a promisor's successful attempts to induce a promisee to enter into a contractual relationship despite the fact that the promisor harbored an undisclosed intention not to perform,' is one type of fraud recognized by New York courts." *Id.* at 165-66 (quoting *Neckles Builders, Inc. v. Turner*, 986 N.Y.S.2d 494, 497 (2d Dep't 2014)); *see also Schwartzco Enterprises LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 344 (E.D.N.Y. 2014) (setting forth elements of fraud under New York law and noting that "under New York law, an action for fraudulent inducement requires the demonstration of: (1) a material misrepresentation or omission that induced the party to sign the contract; (2) scienter; (3) reliance; and (4) injury" (quotation omitted)).  "The claim of fraud, however, must be 'collateral to the contract.'" *President Container Grp. II, LLC*, 467 F. Supp. 3d at 166 (quoting *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir. 2007)).

Additionally, "[c]laims sounding in fraud must satisfy the heightened pleading standards of Federal Rule of Civil Procedure Rule 9(b)." *Olson v. Major League Baseball*, 29 F.4th 59, 71

---

[13]  Plaintiffs assert in briefing that they are raising a fraudulent inducement claim "as an alternative claim to breach of contract."  *See* Pls.' Br. at 31 (quotation omitted).

(2d Cir. 2022).  Under Rule 9(b), a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud."  *See* Fed. R. Civ. P. 9(b).  To satisfy this requirement, "a plaintiff must: '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 167 (2d Cir. 2021) (quoting *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 108 (2d Cir. 2012)); *see also Olson*, 29 F.4th at 71.

### B.    Plaintiffs' Fraudulent Inducement Claim is Dismissed

Plaintiffs fail to identify any specific misrepresentation or omission of material fact.  At best, Plaintiffs allege – in general, conclusory fashion – that an employee of a Center contacted a customer service representative of Defendant and confirmed that Defendant would "share the costs."  *See* Compl. ¶ 30.  Plaintiffs do not allege what amount Defendant represented it would pay or even whether Defendant represented an amount at all.[14]  Further, Plaintiffs do not plausibly allege, *inter alia*, that Defendant had knowledge of any alleged falsity or that Defendant intended to induce reliance by Plaintiffs.  Plaintiffs fall far short of satisfying the requirements of Rule 9(b).

Plaintiffs fail to state a claim for fraudulent inducement and that claim therefore is dismissed.

---

[14]  Plaintiffs include an allegation in the section of their Complaint alleging fraudulent inducement that they do not incorporate in their other causes of action – namely, that the relevant Centers "justifiably relied on [Defendant's] statements that it would reimburse the services at the reasonable and customary rate and as a result [t]he Centers hosted the surgeries."  *See* Compl. ¶ 67.  This conclusory allegation is not supported by factual allegations.  Notably, Plaintiffs do not identify the "statements" on which this conclusory allegation is based.  *See generally* Compl.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss, ECF No. 25, is GRANTED and Plaintiffs' Complaint, ECF No. 1, is DISMISSED.  Such dismissal is without prejudice and without leave to amend.[15]

The Clerk of Court is directed to enter judgment and close the case.

SO ORDERED.

/s/ Diane Gujarati
DIANE GUJARATI
United States District Judge

Dated: March 12, 2025
Brooklyn, New York

---

[15] As noted above, on July 7, 2023, Plaintiffs filed a letter in which they stated that they had "no intention of filing an amended complaint."  *See* ECF No. 11; *see also* ECF No. 21 (December 12, 2023 letter in which Plaintiffs reiterated that they had no intention of amending the Complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (noting that "[w]hile leave to amend under the Federal Rules of Civil Procedure is freely granted, no court can be said to have erred in failing to grant a request that was not made") (quotation and citation omitted); *Felder v. United States Tennis Ass'n*, 27 F.4th 834, 848 (2d Cir. 2022).

In their opposition briefing on the instant Motion, Plaintiffs state, without citation to any supporting authority: "If [Defendant] asserts it is improperly named then Plaintiffs will amend the caption to properly name the Defendant.  In the alternative, if [Defendant] is claiming there are other individuals that are responsible for the payment of certain claims, then [Defendant] needs to identify on the record who those other individuals are so [Plaintiffs] can amend the Complaint and join those individuals."  *See* Pls.' Br. at 1.  The Court declines to construe these statements as a motion for leave to amend, particularly in light of Plaintiffs' prior statements regarding amendment.